## Burks v. Cox.

(Decided June 14, 1912.)

### Appeal from Barren Circuit Court.

1. Tax Sale—Sheriff's Deed—Evidence of Title—Kentucky Statutes, Section 4030.—In a contest between the purchaser at a tax sale and a taxpayer, or anyone claiming under him, a sheriff's deed, under Section 4030, Kentucky Statutes, is prima facie evidence of title in the purchaser by virtue of the tax proceedings.

2. Lands—Action of Ejectment to Quiet Title and of Trespass to Try Title—Tax Sale—Sheriff's Deed—Effect of as Evidence.—In an action of ejectment, or of trespass to try title, or to quiet title, between a purchaser at a tax sale and a third party, not the taxpayer, or claiming through the taxpayer, a sheriff's deed is not prima facie evidence of title in the person in whose name the property was sold, and does not dispense with the necessity of proving title in such person.

PORTER & SANDIDGE for appellant.

BASIL RICHARDSON and BAIRD, RICHARDSON & SUMMERS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

For the year 1906, Dan Sullivan's heirs were assessed with "twenty acres, adjoining Emily Wilson, in precinct No. 17, Barren County, Kentucky." The taxes thereon not being paid, the land was sold by the sheriff of Barren county, December 17, 1906. Appellee, J. M. Cox, became the purchaser thereof for the sum of $3.35. The land not being redeemed, the sheriff of Barren county, on April 6, 1909, and more than two years after the purchase, executed to appellee a deed for the land.

Alleging the foregoing facts, and in addition thereto, that Dan Sullivan purchased the land on the.......day of ..................., 18....., by deed recorded in Deed Book No. 15, page 76, of the records of the Barren county clerk's office, and that Dan Sullivan was the owner and in possession of the premises at the time of his death, and that Dan Sullivan's heirs were the owners of the property at the time it was assessed and sold for taxes, and that plaintiff was the owner and in possession of the land at the time of the institution of the action, plaintiff brought this action against appellant, Harrison Burks, to enjoin him from trespassing upon the land, and from asserting title thereto hostile to plaintiff. Appellant filed an answer and counterclaim, denying the allegations of the petition, and asserting title in himself. By another paragraph, he pleaded that on October 6, 1899, appellee conveyed to Mary E. Ford a tract of land embracing the land in controversy; that thereafter Mary E. Ford and husband sold and conveyed the same land to Martin Owens, and that on September 10, 1906, Martin Owens conveyed the land to appellant; that these various deeds all contained a covenant of general warranty, and that by reason of these covenants, appellee was estopped from setting up any claim to the land adverse to appellant. Appellant further pleaded that appellee had committed various trespasses on the land. Appellant asked that appellee be enjoined and restrained from trespassing on the land, and interfering with appellant's peaceful possession of the same, and prayed that appellee's action be dismissed, and for all general and special relief.

Pending the proceedings, appellee was granted a temporary injunction restraining appellant from trespassing on the land, and from asserting title to himself hostile and adverse to appellee. From that judgment this appeal is prosecuted.

The evidence in this case fails to show that appellee was in possession of the premises when this action was brought. In testifying upon the question of possession, he says that he went there in 1906, as soon as he got the land, and hauled a lot of old corner rock and stuff off it. He further says that he just used the fruit, and that the land had never been cultivated. The evidence further shows the land was not enclosed when no one lived on it. While it is true that possession in fact in a plaintiff is sufficient to maintain trespass or case against one

who has no title, it is manifest from the foregoing statement that no such possession has been shown by appellee. North v. Cates, 2 Bibb, 591; Miller v. Humphries, 2 Marshall, 448.

While there is some evidence tending to show that the land in question was known as the Dan Sullivan land, and that he occupied the land for a while, and perhaps his heirs occupied it for a while, it is not shown that Dan Sullivan and his heirs were in adverse possession of the land in controversy for a period of fifteen years. As there was no attempt to prove a record title in Dan Sullivan or his heirs, and as the proof of title by adverse possession was not sufficient, it follows that appellee failed to establish any title to the land.

Appellee insists, however, that it was not necessary for him to show title in either Dan Sullivan or his heirs, but that the sheriff's deed which he introduced made out a prima facie case of title in him, under section 4030, Kentucky Statutes. That section is as follows:

"In all suits and controversies involving the title to lands claimed or held under a deed executed by the sheriff in pursuance of a sale for taxes, the deed shall be prima facie evidence of the regularity of the sale, and of all prior proceedings, and title in the person to whom the deed has been executed."

The manifest purpose of this section was to change the burden of proof, which was formerly upon the purchaser at the tax sale, and impose upon the taxpayer the burden of proving some fatal irregularity in the tax proceedings. Therefore, all that is necessary on the part of the purchaser in a contest between him and the taxpayer, or anyone holding under the taxpayer, is to introduce the tax deed. This makes out a prima facie case of title in him by virtue of the tax proceedings, and it then devolves upon the taxpayer, or one claiming through him, to show such irregularities in the tax proceedings as will avoid the sale. By such proceedings, the purchaser acquires the title of the taxpayer, whatever it may be. Husbands v. Polivick, 29 Ky. L. R., 890, 128 Ky., 652. It was not the purpose of the Legislature to provide by the statute that in an action of ejectment or of trespass to try title or to quiet title, between him and a third party, not the taxpayer or claiming through the taxpayer, that the sheriff's deed should be prima facie evidence of title, either of record or by adverse possession, in the person in whose

name the property was sold, and thus render it unnecessary in such an action to prove title in him. On the contrary, in such an action, it is still necessary to prove in the taxpayer either a title of record or by adverse possession. Having proven such title in the taxpayer, all that then remains is to introduce the tax deed. This will be prima facie evidence of title in the purchaser by virtue of the tax proceedings. Since in an action such as this, appellee could recover, if at all, only upon the strength of his own title, and he failed to show title in Dan Sullivan's heirs, it follows that the judgment permitting a recovery is erroneous.

Appellant likewise failed to show title to the land in question. His only claim of title is that the land in controversy is embraced in the deeds from appellee to Ford, from Ford to Martin Owens, and from Martin Owens to him.

The deed from Martin Owens to appellant, executed on September 10, 1906, conveys a tract of 162 acres of land, described by metes and bounds. Just after the description in the deed, we find the following:

"The land herein conveyed, which lies between the L. & N. R. R. and L. & N. turnpike, extends from the section house on northeast end to Mrs. Wilson's line on southeast end, and embraces all the land lying between said railroad and pike between these points."

While it may be true that this description includes the land in controversy, no such language is contained in either the deed from appellee to Ford, or from Ford to Martin Owens. In these two deeds, the description is as follows:

"A certain tract of land lying and being in Glasgow Junction precinct and known as the David Owens lands, containing about 100 acres, and being the same conveyed to Mary E. Ford by J. M. Cox and wife in deed of Oct. 6, 1899, bounded as follows, viz: On north by lands of Robt. Hindman; east by lands of Wm. Hindman; west by lands of Dr. J. Y. Wilson and W. L. Poynter, south by the Louisville & Nashville turnpike road. This conveyance is intended to embrace and does embrace all of the lands formerly owned by David Owen, reference is hereby made to County Clerk's office of Barren county, or Register's office at Frankfort, Ky., for records of metes, bounds, courses and distances in deed of said David Owen. One half acre is excepted from this conveyance for family grave yard."

By this deed a tract containing only 100 acres is conveyed, while in the deed from Martin Owens to plaintiff a tract of 162 acres of land is conveyed. Furthermore, the purpose of the grantors in the two first deeds was to convey the land formerly owned by David Owens. Even without an allegation of mistake, it is competent to show what lands David Owens owned. A number of witnesses testified that the tract of land in controversy was not a part of the farm owned by David Owens; that it was never fenced as a part of his farm, and was never claimed by him. On the contrary, he and those claiming through him always recognized the tract of land in controversy as belonging to someone else. We therefore conclude that the deed made by appellee to Mary E. Ford did not embrace the land in controversy. As there was no attempt on the part of appellant to show title by record or by adverse possession, and he failed to show title by estoppel, it follows that he is not entitled to recover on his counterclaim.