## M. Luther Hall and Redding v. Joseph D. Hall, et al.

(Decided March 2, 1917.)

### Appeal from Shelby Circuit Court.

1.  Taxation—Sale of Land For Taxes—Sheriff's Deed.—Section 4030 Kentucky Statutes, declares that a sheriff's deed conveying real estate, previously sold for a tax, shall be prima facie evidence of the regularity of the sale and of all prior proceedings, and of title in the person to whom the deed has been made. But while such deed vests in the grantee, what the statute declares, a fee simple title, it is, after all, just such title as the person against whom the land was assessed had therein.

2.  Taxation—Sale of Land For Taxes—Purchaser.—The statute regulating the sale of real estate for taxes in this state and providing for its conveyance to the purchaser, following the failure of the owner to redeem it, does not vest in the purchaser at a tax sale a new title originating in the state and created by the tax sale, but authorizes merely the transfer to the purchaser at such sale of the title owned by the person against whom the assessment was made.

3.  Taxation—Sale of Land For Taxes—Sheriff's Deed—Title.—Since the effect of a sheriff's deed to the purchaser at a tax sale is to vest in the latter only such title as was owned by the person against whom the land was assessed, the title thus acquired by such tax sale purchaser, cannot defeat or extinguish a bona fide, existing, prior lien or liens upon the land. He, therefore, takes the title to the land subject to such prior lien or liens, the latter being, in turn, inferior to the paramount lien given the purchaser on the land by the statute for the tax, penalties and interest paid by him therefor.

BEARD & RIVES for appellants.

WILLIS, TODD & BOND for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Affirming.

Maria Tevis died in Shelby county the owner of a house and lot which, by will, she devised to her husband, John Tevis. The will was duly admitted to probate and John Tevis, named therein as executor, properly qualified as such. She had been a faithful servant for many years of the Guthrie family of Shelby county and in her old age this property was purchased by Mr. James Guthrie and, by deed, conveyed to her. On December 27th, 1901, and shortly after she thus acquired the property, in order

to make some necessary improvements upon it, Maria Tevis borrowed of the appellee, Joseph D. Hall, $200.00, for which she then gave her note secured by a mortgage on the property, executed by herself and husband, John Tevis. The interest was paid on this debt down to December 27th, 1910, and $5.00 was paid thereon by John Tevis, July 20th, 1912. The mortgage upon the house and lot was in existence when the property went into the possession of John Tevis under the devise contained in Maria's will. On December 31st, 1910, shortly after John Tevis became the owner of the property, he borrowed of the appellee, J. C. Bright, $335.59, for which he gave his note secured by a second mortgage upon the property.

In September, 1912, John Tevis, as owner of the lot, listed it for taxation for the year 1913 and, having failed to pay the tax due the state and county thereon for that year, amounting to $6.30, the property was, on March 9th, 1914, publicly sold by the sheriff of Shelby county to the appellants, M. Luther Hall and W. C. Redding, the amount paid by the latter being the tax of $6.30, with the interest and penalty allowed by law, making altogether $14.85. Tevis, having failed to redeem the property within the two years allowed by the statute, it was, by deed of date March 10th, 1916, from the sheriff, conveyed to Hall and Redding. This deed was acknowledged by the sheriff, March 25th, 1916, and lodged for record, April 7th, 1916.

March 22d, 1914, the appellee, Joseph D. Hall, holder of the first mortgage on the lot in question, brought this equitable action in the Shelby circuit court to enforce the lien thereby given him. John Tevis in his own right and as executor of the will of Maria Tevis, the appellee, J. C. Bright, holder of the second mortgage on the lot, and the appellants, M. Luther Hall and W. C. Redding, claimants of the lot under the tax sale mentioned, were made defendants; it being alleged in the petition that Bright held a mortgage lien upon the property inferior to that of the plaintiff and that the appellants, M. Luther Hall and W. C. Redding, were claiming some sort of right or interest in the property, the nature and amount of which was unknown to the plaintiff. Tevis answered only for the purpose of entering his appearance, but answers were filed by Bright, M. Luther Hall and W. C. Redding. That of Bright was made a cross-petition against John Tevis, M. Luther Hall and W. C. Redding, and admitted that the mortgage of J. D. Hall was the

first lien upon the lot, set up his mortgage as a second lien thereon, and prayed its enforcement. The answer of the appellants Hall and Redding, which was made a cross-petition against the appellees, Joseph D. Hall, J. C. Bright and John Tevis, controverted the mortgage liens of J. D. Hall and Bright, denied their right to the enforcement thereof, and set up title in themselves to the lot in question by virtue of the tax sale and the deed made them by the sheriff.

The appellees, J. D. Hall and J. C. Bright, each filed a general demurrer to the answer and cross-petition of the appellants, M. Luther Hall and W. C. Redding, both of which demurrers were sustained by the circuit court, and, appellants refusing to plead further, the court rendered judgment, so much of which as bears upon the questions here involved, being as follows:

"It is adjudged by the court that the plaintiff, Joseph D. Hall, and the defendant, J. C. Bright, each has a lien on the property hereinafter described to secure the payment of their respective debts. Plaintiff, Joseph D. Hall, has a lien on same to secure the payment of the sum of $200.00, with interest from December 27th, 1909, credited by $5.00 paid July 20th, 1912; and the defendant, J. C. Bright, has a lien on said property to secure the payment of $335,59, with interest from December 31st, 1910, credited by $20.00 paid May 7th, 1914, and $30.74 paid May 5th, 1915. It is further adjudged by the court that the defendants, M. Luther Hall and W. C. Redding, are the owners of said property by reason of, and under, the sheriff's deed executed and delivered to them on April 7th, 1916, as against the defendant, John Tevis, who was the owner of said property at the time said taxes were levied and said property sold, but that as against the plaintiff, Joseph D. Hall, and the defendant and cross-plaintiff, J. C. Bright, said M. Luther Hall and W. C. Redding have only a superior lien on said property to secure the payment of the taxes paid by them, to-wit: $6.30, the statutory penalties allowed by law amounting altogether to $14.85, with interest from March 9th, 1916, until paid. The lien of the plaintiff, Joseph D. Hall, is superior to that of the defendant, J. C. Bright. It is further adjudged by the court that the said property be sold to satisfy the liens above mentioned. . . . ."

Appellants' dissatisfaction with the judgment led to their prosecution of this appeal.

The question presented for decision by the appeal is, does a sheriff's deed conveying to the purchaser real estate, sold by that officer for a tax due thereon, extinguish a legally acquired lien in favor of a third party, created upon the property before its assessment and existing at the time of such tax sale and when the deed was executed?

The question here presented does not seem to have been decided in this jurisdiction, and where it has been passed on in other jurisdictions the cases show considerable diversity of opinion. This want of harmony is shown by the discussion of the question found in 37 Cyc. pages 1472 to 1476, inclusive, and the authorities contained in the footnotes. Thus on page 1474 it is said:

"If the laws contemplate only the sale and transfer of the title or interest of the person in whose name the property was assessed, the purchaser at a tax sale will become invested with precisely the same title which was held by the delinquent taxpayer, no more and no less, and will take it subject to any infirmities, limitations or liens which attached to it in the hands of the former owner. But if the land is duly assigned to the owner of record the title of the tax purchaser will prevail against the owner of an unrecorded deed from such former owner, provided the tax purchaser had no notice or knowledge of such deed or of facts which should have put him on inquiry."

Again at page 1475 it is said:

"In general, it is competent, for the legislature to make the lien of taxes on real estate paramount to all other existing liens and encumbrances, and when this is done and when the tax sale is considered as creating a new and independent title, it destroys and extinguishes all existing liens, charges and encumbrances of every kind, and gives the purchaser a clear and unencumbered title. But on the other hand, if the tax lien is not made paramount by law, or if the tax sale is considered as passing only the title of the person assessed, it does not divert valid liens previously attached."

Section 4154, Kentucky Statutes, provides:

"If the land (sold for taxes) be not redeemed within the two years allowed for that purpise, the fee simple title thereto is vested absolutely in the state, county and district, each having a joint interest, in proportion to the tax due them respectively; and if said lands purchased by individuals be not redeemed within two years

allowed for that purpose, the fee simple title is at once vested in such individual."

Section 4159 provides:

"All conveyances of lands sold for taxes shall be made in the name of the Commonwealth to the person entitled thereto. When the right to redeem shall have expired, a sheriff or collector then in office (where the Auditor, of Public Accounts is not directed to make deeds of conveyance as provided in section 32 [154] ), shall convey to the purchaser the property described in his certificate of purchase, for which deed shall be allowed a fee of $1.50 to be paid by the grantee in the deed."

In James, Auditor, et al. v. Blanton, et al., 134 Ky. 803, we held:

"That where the state bids in land at a tax sale as provided in sections 4151-2, Kentucky Statutes, it acquires a lien for the tax and penalty until the expiration of two years, at which time, if the land has not been redeemed, the fee simple title is made, by section 4154, Kentucky Statutes, to vest absolutely in the state."

In a contest between the purchaser at a tax sale and a taxpayer, or any one claiming under him, section 4030, Kentucky Statutes, declares that a sheriff's deed is only prima facie evidence of the regularity of the sale and of all prior proceedings, and of title in the person to whom the deed has been executed. Burke v. Cox, 149 Ky. 106.

It must be conceded that the statute makes the lien for taxes paramount to all other existing liens and encumbrances, and that following a sale of real estate for the tax collectible thereon, and the failure of the owner to redeem the same within the two years allowed by law, a deed from the sheriff to the purchaser of the property at the tax sale vests in the latter what the statute declares a fee simple title. But, after all, the title so acquired is just such as the person against whom the land was assessed, had. We have repeatedly held that the purchaser at a tax sale acquires only the title of the person against whom the land was assessed, Rogers v. McAlister, 151 Ky. 488; Eastern Ky. Coal Lands Corporation v. Commonwealth, 127 Ky. 720. So, the effect to be given a tax deed depends upon the construction that must be given the Kentucky Statutes authorizing the sale of lands for taxes, as the power to sell for taxes is purely statutory, and, since as already stated, the statutes of the state do not vest in the purchaser at a tax sale a new title originating in the state and created by the tax sale, but au-

thorize merely the transfer to the purchaser at the tax sale of the title owned by the party against whom the assessment was made, it would be as inequitable to allow the title acquired by the purchaser at the tax sale, under the deed from the sheriff, to defeat a bona fide, existing, prior lien upon the property, as to permit it to be done by a purchaser under a deed from the former owner against whom the tax assessment was made. The statute does not declare in terms that the purchaser by virtue of the tax sale and deed from the sheriff shall take the land free of existing liens. Such a meaning to the statute could only be arrived at by inference, and such inference is not justified by its language or spirit. It is true section 4032 permits any person having a lien upon real estate to pay the taxes if the owner has failed to so do, and to be subrogated to the lien of the Commonwealth, county or district for such taxes; but this right is doubtless accorded as a means by which the lienholder may protect himself against the paramount lien that would be acquired on the land by a purchaser thereof at its sale for the taxes. The statute does not, however, declare that the lienholder's failure to avail himself of this right will extinguish his lien if the property be sold for the taxes thereon and conveyed by the sheriff to the purchaser at such sale. The duty to keep the taxes paid upon the property devolves upon the owner. Tax sales are, it is true, advertised by the sheriff before the sale of the property, but this is to give notice to the owner of the property rather than to persons having liens thereon.

It might with greater propriety be said that the purchaser at the tax sale is charged with the knowledge of a recorded lien then existing upon the property. But that fact would not defeat the paramount lien given by the statute for the tax and penalty paid by him in its purchase.

It is our conclusion that appellants acquired, under the tax sale and deed from the sheriff, a fee simple title to the Tevis lot, subject to the mortgage liens of appellees, which liens are in turn subject to the paramount lien given appellants on the property by the statute for the amount of the tax, statutory penalties and interest paid by them therefor. Whatever authority may be found elsewhere sustaining the contrary view, it has not been declared in this state to be the law that a tax sale is to be regarded as creating a new and independent title. On

the contrary, we think it more consonant with reason to say that the effect of a tax sale and deed from the sheriff conveying the property to the purchaser at such sale only vests in the latter such title or interest therein as was held and owned by the person in whose name the property was assessed.

The house and lot in controversy is worth $600.00 and it would be an inequitable requirement to say that appellants should be allowed to hold it because of the payment by them of the tax thereon, with its added penalties and interest, amounting altogether to only $14.85, and thereby wholly deprive appellees of their debts, for which they have no other security than their mortgage liens on the property. Our understanding of the case does not require of us such a harsh construction of the statute. It is sufficient that it gives appellants a first lien on the lot for what they expended in its purchase and this the judgment accords them. Moreover, in considering the equities of the case it is not to be overlooked that though appellants were entitled to the deed from the sheriff immediately before the institution of this action, it was not, in fact, acknowledged or lodged for record until thereafter. This would seem to indicate that if they had not been served with summons in the action, they at least knew of its institution, and hence hastened the execution of the deed in the hope that it would give them an additional weapon for use in destroying appellees' liens. As it is our conclusion that the judgment of the circuit court properly determined the rights of the parties, it is affirmed.